JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

## ORDER RE:  BANKRUPTCY APPEAL

## I.
## INTRODUCTION

This action arises out of the Chapter 11 involuntary bankruptcy proceedings of Beshmada, LLC ("Beshmada"), represented here by Bradley Sharp, trustee for the Beshmada Liquidating Trust ("Trustee" or "Appellee").  The bankruptcy court entered judgment against Appellant Richard Stromberg ("Appellant" or "Stromberg") following a bench trial, and Stromberg now appeals that judgment.  The Court finds the matter appropriate for disposition without argument.  (Rule 78, Fed. R. Civ. P.; Local Rule 7-15.)

Beshmada brought two claims against Stromberg in the adversary proceeding below, both relating to the management of non-Party Innoprize XX, LLC ("Innoprize XX").  Stromberg and Beshmada had cooperated to found Innoprize XX, with Stromberg responsible for distributing Innoprize XX's profits between them.  However, when the Trustee began reviewing Beshmada's records in connection with its chapter 11 proceedings, he discovered that Stromberg had failed to properly perform this role.  Specifically, he found that Stromberg had failed to disburse to Beshmada roughly $260,000 due from Innoprize XX's sale of a rental property.  The court below agreed with this conclusion, and entered judgment for Beshmada.

Stromberg now challenges both the bankruptcy court's findings and its underlying ability to hear the case.  (Docket No. 18 [Appellant's Opening Br. ("Mem.")].)  As the Trustee points

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

out, however, Stromberg expressly accepted the bankruptcy court's jurisdiction. (Docket No. 22 [Appellee's Response Br. ("Opp.")].) Moreover, the claims against him were thoroughly supported by evidence in the record before the trial court. The judgment of the bankruptcy court must therefore be **AFFIRMED**. The Court sets forth its reasoning, in greater detail, below.

**II.**
**BACKGROUND**

**A. FACTUAL BACKGROUND**

In May 2005, Stromberg and Beshmada—along with non-Party John Harounian—formed Innoprize XX, a limited liability company. (Docket No. 23 [Trustee's Appendix to Appeal ("TA")] at 53 [Innoprize XX Company Agreement ("Innoprize XX Agmt.")] at 1.) As Stromberg described it, the plan for this company was twofold: it would purchase a piece of property and then, when conditions were favorable, it would sell the property at a profit. (TA at 13 [Deposition of Richard Stromberg ("Stromberg Dep.")] at 19:15–20.)

The first step was realized in November 2005, with the acquisition of an apartment building located at 1331 South Albany Street, Los Angeles, California (the "Albany Property"). (Innoprize XX Agmt. at 5, 11.) Stromberg's handling of the Albany Property forms the basis of the present dispute.

As his attorney indicated at trial, Stromberg was the "managing member" of Innoprize XX. (Docket No. 19 [Stromberg's Appendix to Appeal ("SA")] at 60 [10/9/2013 Trial Transcript ("Trial Tr.")] at 101:3–5; see also TA at 13 [Deposition of Richard Stromberg ("Stromberg Dep.")] 14:12–14.) In this capacity, he was responsible for "administering the operations of the [Albany Property] during its ownership." (Stromberg Dep. at 18:20–21.) He was also responsible for overseeing the second step of Innoprize XX's plan: he "acquired a purchaser [for the Albany Property] and . . . administered the sale transaction." (Id. at 18:21–22.) In short, Stromberg was responsible for distributing all sums received from the sale of the Albany Property. (Id.; Innoprize XX Agmt. § 7.03.)

On November 30, 2007, Innoprize XX sold the Albany Property, with net proceeds of $469,141.07. (Stromberg Dep. at 20:14–18, 21:11–13; SA at 23 [QuickBooks Report] at 1.) This entire amount was then transferred to yet another third-Party, Innovative Real Estate

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|

| Title | In re Beshmada, LLC |
|---|---|

("Innovative").[1]  (Trial Tr. at 20:21–25, 21:1–5, 22:21–25, 23:1–4; TA at 215 [Summary of Innoprize XX Bank Activity ("Innoprize XX Summ.")].)  Innovative was wholly owned by Stromberg.  (Stromberg Dep. at 23:1–13.)

The books presented to the bankruptcy court indicated that Beshmada's share in the Albany Property sale should have been $408,784.07.  (QuickBooks Report at 1.)  However, in bringing its action, the Trustee offset this amount by $147,932, an amount due to Stromberg from the sale of several similar investment properties in which the two Parties had an interest.  (Id.)  The net amount ostensibly owed by Stromberg to Beshmada was therefore $260,852.07.

**B. PROCEDURAL BACKGROUND**

Based on the above facts, Beshmada filed an adversary proceeding against Stromberg in June 2012.  (SA at 20 [Compl.].)  It asserted two claims against him, one for money lent and the other on an open book account.  (Compl. ¶¶ 8–13.)  The case then went along for some time with Stromberg representing himself; he was pro se both at his deposition in April 2013, and while preparing a pre-trial stipulation in May 2013.  (See Stromberg Dep. at 5:24–6:2; and SA at 35 [Pre-Trial Stip.] at 4.)

In fact, Stromberg represented himself until the morning of trial in October 2013.  (Trial Tr. at 1:14–16.)  And through all that time, he failed to dispute the bankruptcy court's authority to hear the case against him.  Quite to the contrary, Stromberg explicitly agreed that the bankruptcy court "ha[d] jurisdiction over [the] adversary proceeding."  (Pre-Trial Stip. at 2.)  He went on to indicate that the action was "a core proceeding under 28 U.S.C. § 157(b)(1), (2) (A) and (O)."  (Id.)

---

[1] The Court notes that Stromberg's description of the proceed-disbursement process has been inconsistent, and always at-odds with the accounting records.  At his deposition, Stromberg said that the profits from the Albany Property sale were split between Beshmada, non-Party John Harounian, and himself.  (Stromberg Dep. at 24:2–5.)  Specifically, Stromberg indicated that he had given Beshmada "all the proceeds that [it] was entitled to."  (Id. at 27:19–21.)  At trial, by contrast, he indicated that "nothing was owed" to Beshmada following the sale.  (Trial Tr. at 76:10–78:9.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

This all changed just before trial. On October 8, 2013—the night before trial began—Stromberg's attorney filed a "notice of association."[2]  (SA at 1 [Bankruptcy Court Docket ("Bk. Docket")] at 5.)  He also filed both an answer and a motion to dismiss, each objecting to the court's assertion of jurisdiction over the case.  (Id.; SA at 28 [Answer ("Ans.")]; SA at 56 [Mot. to Dismiss].)  As the bankruptcy court noted, the answer was beyond late, while the motion to dismiss was "frivolous."  (Trial Tr. at 3:22–23, 4:6.)  Neither altered the court's treatment of the case.

Following trial—with direct testimony taken through declaration—the bankruptcy court entered judgment in Beshmada's favor for the full amount requested:  $260,852.07 plus attorney's fees.  (SA at 45 [Judgment] at 2.)  However, while attorney's fees were initially part of the judgment, the bankruptcy court denied the Trustee's eventual fee request.  (Bk. Docket No. 56.)  Moreover, this award was apparently based only on the open book account claim; the bankruptcy court never mentioned Beshmada's money lent cause of action.  (Judgment at 1–2.)

**C.  QUESTIONS ON APPEAL**

Stromberg now appeals the bankruptcy court's findings at trial.  He raises the following questions on appeal:

> 1. Did the bankruptcy court have jurisdiction to enter judgment against a non-creditor third party?

> 2.  Is an adversary proceeding based on claims of money lent and account stated a core proceeding pursuant to 11 U.S.C. § 157?

> 3. Is an adversary proceeding for conversion a core proceeding pursuant to 11 U.S.C. § 157?

---

[2] The bankruptcy judge, confronted with this notice, indicated his confusion: "Well, what does that mean, association? . . . [E]ither you represent him or you don't. . . . I've never heard, except in a criminal case, [of] somebody assisting a pro se debtor."  (Trial Tr. at 1:17–18, 1:24–2:2.)  The attorney was allowed to remain in the case, even though authorization for "association" was nearly nonexistent, for Stromberg's benefit.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|----------|----|------|------|
| Title | In re Beshmada, LLC | | |

4.   Is Richard Stromberg personally responsible for the obligations of Innoprize XX, LLC and/or Innovative Real Estate, Inc.?

5.  Is the adversary proceeding for money loaned and account stated barred by California's statute of limitations?

6.  Is a QuickBooks account record prepared two years after the underlying transaction competent evidence of an account stated under the Federal Rules of Evidence?

7.  Did the bankruptcy court err when it entered a judgment against Defendant for attorney's fees?

(Mem. at 2.)  These can be separated into three conceptual categories:  (1) jurisdictional questions, (2) liability questions, and (3) the propriety of attorney's fees.

**III.**
**DISCUSSION**

**A.  STANDARDS OF REVIEW**

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).  Federal Rule of Bankruptcy Procedure 8013 provides that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.  The bankruptcy court's "conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error."  In re Taylor, 599 F.3d 880, 887 (9th Cir. 2010).

Clear error can be found "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Banks v. Gill Distrib. Ctrs., Inc. (In re Banks), 263 F.3d 862, 869 (9th Cir. 2001) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).  "The existence of the bankruptcy court's jurisdiction is a question of law subject to de novo review."  Marciano v. Fahs (In re Marciano), 459 B.R. 27, 34 (B.A.P. 9th Cir. 2011) (citing Reebok Int'l, Ltd. v. Marnatech Enters., 970 F.2d 552, 554 (9th Cir. 1992)).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|----------|------|------|------|
| Title | In re Beshmada, LLC | | |

**B. APPLICATION**

    **1. THE BANKRUPTCY COURT'S JURISDICTION**

        In all "core proceedings arising under title 11, or arising in a case under title 11," a bankruptcy judge has the power to "hear and determine the controversy" and enter final orders, subject only to appellate review. 28 U.S.C. § 157(b)(1). In a non-core proceeding "that is otherwise related to a case under title 11," however, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). The entry of final judgment in non-core proceedings is the sole province of Article III judges.

        28 U.S.C. § 157(b)(2) lists several non-exclusive examples of "core proceedings." Even so, the Supreme Court's decision in <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011), generally requires reviewing courts to look outside this list for guidance. If a claim "cannot be deemed a matter of 'public right,'" judgment cannot be entered on it by the bankruptcy court. <u>Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)</u>, 702 F.3d 553, 562 (9th Cir. 2012) (<u>citing Stern</u>, 131 S.Ct at 2611).

        The "public right" inquiry, though, is unnecessary if the parties consent to the bankruptcy court's jurisdiction. "The waivable nature of the allocation of adjudicative authority between bankruptcy courts and Article III courts is well established." <u>In re Bellingham</u>, 702 F.3d at 566. That is, bankruptcy courts may enter final judgments in non-core proceedings "with the consent of all the parties to the proceeding." 28 U.S.C. § 157(c)(2). "The only question, then, is whether [a defendant] did in fact consent to the bankruptcy court's jurisdiction." <u>In re Bellingham</u>, 702 F.3d at 567 (<u>aff'd</u> 134 S.Ct. 2165, 2172 (2014) ("If all parties 'consent,' the statute permits the bankruptcy judge 'to hear and determine and to enter appropriate orders and judgments' as if the proceeding were core.")).

        Stromberg clearly consented to the bankruptcy court's jurisdiction in this case. As an explicit indication of this consent, he signed a pre-trial stipulation stating that the bankruptcy court "ha[d] jurisdiction over [the] adversary proceeding." (Pre-Trial Stip. at 2.) An order based on this stipulation was subsequently entered by the bankruptcy court. (Pre-Trial Stip. at 4.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

A litigant may also "impliedly consent[] to the bankruptcy court's jurisdiction when he fails to timely object."  In re Bellingham, 702 F.3d at 567; see also In re Mann, 907 F.2d 923, 926 (9th Cir. 1990) (allowing implied consent).  The adversary proceeding against Stromberg was filed in June 2012.  He did not object to the bankruptcy court's jurisdiction, even though he was actively engaged in litigating the matter, until October 2013.  While this is not as extreme as the delay described in In re Bellingham—where the litigant failed to object to jurisdiction until after final judgment had been entered—it comes close.  702 F.3d at 568.  If this is not a failure to timely object, almost nothing could be.[3]

Stromberg finally makes the argument—at least in his reply, if not in his opening briefing—that the Trustee tricked him into consenting by pretending that the case was a core proceeding when it was actually an action for conversion.  (Docket No. 26 [Appellant's Reply Br. ("Reply")] at 10.)  In the first place, Stromberg provides no authority for the conclusion that trickery is an excuse for explicit consent.  (See id.)  Moreover, as the Court explains below, the argument that this case was actually one for conversion has no merit; while conversion was mentioned as a possible theory of recovery, the bankruptcy court clearly based its decision on the stated claim for an open book account—one of the two claims discussed in the pre-trial stipulation.

Because Stromberg consented to the jurisdiction of the bankruptcy court, the Court need not address the questions of whether claims for money lent, open book account, or conversion are core proceedings pursuant to 11 U.S.C. § 157.  The bankruptcy court's exercise of jurisdiction is **AFFIRMED**, and its remaining findings of fact will therefore be reviewed for clear error.

/ / /

---

[3] Stromberg suggests that he raised the issue of jurisdiction in his answer, which was supposedly signed in July 2012.  (Mem. at 6.)  But the answer was not actually filed until October 2013.  Moreover, even if the answer had been filed in July 2012, Stromberg would have subsequently waived his jurisdictional objections by consenting to the bankruptcy court's authority in the pre-trial stipulation and order.  DP Aviation v. Smiths Indus. Aero. & Def. Sys., 268 F.3d 829, 842 n.8 (9th Cir. 2001) ("[a] pretrial order generally supersedes the pleadings, and the parties are bound by its contents") (quoting Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993)).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

## 2. BESHMADA'S CLAIMS AND THE BANKRUPTCY COURT'S FINDINGS OF FACT

As described above, Beshmada brought two claims against Stromberg: one for money lent, and another for an open book account. (Compl. ¶¶ 8–13.) Following a bench trial on these claims, the bankruptcy court made several pertinent findings of fact, and ruled that Stromberg was liable to Beshmada for $260,852.07—the full amount requested—based on an open book account. (Judgment at 2; SA at 51 [Findings of Fact and Conclusions of Law ("Findings")].)

Stromberg has contested only some of the court's findings of fact, though they pertain to both claims. Other than the findings pertaining to jurisdiction—disposed of already, above—Stromberg objects to Finding 10, Finding 12, Finding 13, and Finding 14. (Reply at 13–18.) The Court considers each, below.

### a. Finding 10: Stromberg was the Managing Member of Innoprize XX, with Responsibility for Distributing Its Funds

The first contested finding of fact, entered by the bankruptcy court following a trial based on testimony, depositions, declarations, and exhibits, reads as follows:

> Innoprize [XX]'s organization, memorialized in a formal Operating Agreement dated as of June 29, 2006 [] was comprised of Beshmada, [Stromberg] and John Harounian as members. [Stromberg] was the managing member of Innoprize, assuming responsibility over the Albany Street Property and the distribution of all sums due to himself and the other members of Innoprize.

(Findings ¶ 10.)

Stromberg believes that the Innoprize XX Agreement, the "formal operating agreement" described by the bankruptcy court, conflicts with this finding. (Reply at 16.) He claims that the agreement "does not designate a managing member," and that "[d]isbursement authority is vested in [an] Executive Committee." (Id.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|----------|------|------|------|
| Title | In re Beshmada, LLC | | |

It might be true that the agreement does not designate a "managing member."  But regardless of what the agreement says, Stromberg's own testimony was that he acted in that capacity.  (Stromberg Dep. 14:12–14) (Q: "what was your membership role?" A: "I was the managing member.")  This statement was corroborated by Stromberg's description of his duties: as the managing member, he "administered the sale transaction."  (Id. at 18:21–22.)  That is, when Innoprize XX sold the Albany Property, Stromberg was responsible for taking it through escrow.

The role Stromberg was to play as "managing member" is further corroborated in Beshmada's account records.  As the Trustee's expert testified, Beshmada's accounts indicated that "$469,141.07 was due from *Stromberg* to Beshmada from the Sale of the Albany property." (TA at 122 [Decl. of Eric Held ("Held Decl.")] ¶ 28) (emphasis added.)  This total was reduced by $208,289, which Beshmada owed to Stromberg from the sale of other properties.  (Id. ¶¶ 25–27.)  The amount remaining, $260,852.07, was to have been paid by Stromberg personally[4] to Beshmada.  (Id. ¶ 29.)

As Stromberg notes, the actual QuickBooks reports used at trial were filtered to include only transactions involving Stromberg, and were actually printed some time after the transactions they dealt with had transpired.  (See Mem. at 24–25.)  He therefore asks the Court to find that they were inadmissible.  (Id.)  However, as described by the Trustee's witness, "Beshmada maintained its accounting records in its QuickBooks computer accounting system," using "only one general ledger" for all accounts.  (Held Decl. ¶ 6.)  These records were "reviewed on a monthly basis," and both payments and obligations were recorded "at or near the time of the transactions."  (Id. ¶¶ 12, 15.)  Filtering and printing records as they become necessary for litigation does not make them inadmissible; they still reflect contemporaneous business records, (id. ¶ 19), and they are therefore admissible under the federal rules of evidence. Fed. R. Evid. R. 803(6); see, e.g., FTC v. Commerce Planet, Inc., 878 F. Supp. 2d 1048, 1090 n.18 (C.D. Cal. 2012) (accepting testimony based on QuickBooks reports); United States v.

---

[4] Stromberg now provides a multi-page quotation regarding the protections supposedly afforded by Innoprize XX's corporate form.  (Mem. at 17–19.)  In doing so, he suggests that liability could only attach to him through an alter ego theory.  (Id.)  But his three page quotation fails to address the particular situation confronting the Court:  one member of a corporation is given responsibility for disbursing that corporation's assets to other members.  The alter ego doctrine addresses the liability of a corporate shareholder to third parties with claims against a corporation.  See, e.g., 9 Witkin, SUMMARY OF CALIFORNIA LAW, Corporations § 9, at 785 (2012).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

<u>Liew</u>, 2013 U.S. Dist. LEXIS 172893, at *17 (N.D. Cal. Dec. 9, 2013) (same).  Moreover, even if they were inadmissible, the facts they reflect can be found in other transactions and closing statements—essentially, contemporaneous receipts—provided to the bankruptcy court.  (<u>See</u> Held Decl. ¶ 30.)

There is sufficient evidence that the Court cannot see clear error in the bankruptcy court's ultimate finding.  It must therefore be **AFFIRMED**.

> ### b. Finding 12:  Under Stromberg's Direction, the Net Proceeds of the Albany Property Sale were Directed to Innovative, which Defendant Himself Owned

The next contested finding of fact, again entered by the bankruptcy court following a trial based on testimony, depositions, declarations, and exhibits, reads as follows:

> Escrow properly transferred the [proceeds due from the sale of the Albany Property] to Innoprize [XX]'s bank account . . . .  Under the direction of [Stromberg, this money was] transferred by Innoprize [XX] to Innovative Real Estate [], a business owned and controlled by Defendant.

(Findings ¶ 12.)  Again, the bankruptcy court's finding has substantial support in the record before it.

Stromberg does not contest the claim that proceeds from the Albany Property sale were transferred to Innovative.  (Reply at 14–15.)  As a matter of fact, the record on this point is quite strong.  (<u>See</u> Innoprize XX Summ. at 1) (showing transfers from Innoprize XX's bank accounts to Innovative's bank account.)  Rather, Stromberg argues simply that he was not in control of the transfer.  (Reply at 14–15.)  As described above, there was sufficient evidence for the bankruptcy court to conclude that Stromberg was in control of and responsible for disbursing funds from the sale.  His claim to have had nothing to do with the transfer to Innovative is therefore unavailing.  This finding must be **AFFIRMED**.

/ / /

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

### c. *Finding 13:  No Sale Proceeds were Transferred to Beshmada, as Reflected in its Open Book Account*

The next contested finding of fact, entered following a trial based on testimony, depositions, declarations, and exhibits, reads as follows:

> No portion of the [Albany Property sale proceeds] ever were transferred to Beshmada.  Beshmada maintained an open book account reflecting credits due and charges owed by [Stromberg] to Beshmada, including for the entitlement of Beshmada to the [Albany Property sale proceeds] . . . .

(Findings ¶ 13.)  Again, the bankruptcy court's finding had substantial support in the record before it.

Stromberg apparently accepts that Beshmada never received any money from the Albany Property sale.  (Reply at 15–16.)  Once more, the evidence on this point is quite strong.  (See QuickBooks Report at 1; Held Decl. ¶¶ 29, 33–34.)  Accordingly, Stromberg instead argues that no open book existed.  (Reply at 15; Mem. at 22–23.)  This argument holds little weight.

An open book account is "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor . . . , and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made."  Cal. Code Civ. Proc. § 337a.  It must be "entered in the regular course of business as conducted by such creditor or fiduciary, and [] kept in a reasonably permanent form and manner."  Id. To prevail on an open book account claim, a plaintiff must show that:  "(1) Plaintiff and Defendant had financial transactions; (2) that Plaintiff kept an account of the debits and credits involved in the transactions; (3) that Defendant owes money on the account; and (4) the amount of money that Defendant owes Plaintiff."  ERTEC Envtl. Sys. v. RiverValley EcoServs., Inc., 2013 U.S. Dist. LEXIS 149810, at *8 (N.D. Cal. Sept. 20, 2013).  There was certainly sufficient evidence before the bankruptcy court to allow it to conclude that these elements were all met.

The testimony and declaration provided by the Trustee's expert, Eric Held—in conjunction with the QuickBooks Report described above—detail the financial interactions between Beshmada and Stromberg.  Indeed, the QuickBooks Reports themselves reflect an account of "debits and credits" between the Parties, and show the precise amount of money

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|----------|----------------------------------------------------------------------------------------------------------------------------|------|-----------------|
| Title | In re Beshmada, LLC | | |

owed by Stromberg to Beshmada. Accordingly, each element of an open book account claim has been met.

Stromberg's secondary attack on this conclusion suggests that any money he owes Beshmada would arise solely out of a contract. (Reply at 15.) And, he says, "an Open Book Account cannot arise when a contract exists that govern [sic] the entire transaction." (Id.) Even assuming this were true, no contract governs the entire transaction described in this case.

The total amount due to Beshmada from the Albany Property sale was $469,141.07. This amount could, potentially, be inferred from the Innoprize XX Agreement; it prescribed the conduct of Beshmada, Stromberg, and John Harounian, with regard to any property Innoprize XX might purchase. (E.g., Innoprize XX Agmt. at 20–33.) However, other transactions not encompassed by the Innoprize XX Agreement were credited against this $469,141.07 debt. (Held Decl. ¶¶ 25–27; QuickBooks Report at 1.) These credits arose out of property sales not involving Innoprize XX, and these credits were the only method by which Stromberg's $469,141.07 obligation could have been reduced to the final judgment amount of $260,852.07. (Id.)

This is the very situation for which open book account claims exist. Multiple financial transactions take place between parties, and they can best be settled by referring to contemporaneous accounting records. The bankruptcy court's determination that Beshmada had a valid open book account claim against Stromberg must therefore be **AFFIRMED**.

### d. Finding 14: Beshmada is Owed $260,852.07, Given Stromberg's Obligations Under the Innoprize XX Operating Agreement

The final contested finding of fact, can be dealt with briefly. It reads as follows:

Beshmada is owed $260,852.07 as the net due it from the [sale of the Albany Property] as governed by the Operating Agreement. This sum is owed to it by [Stromberg], whose responsibility it was under the Operating Agreement to provide said sum to Beshmada, which he failed to do.

(Findings ¶ 14.) This finding simply reflects the combination of prior findings already affirmed by the Court. (See Findings ¶¶ 10, 12, 13) (Stromberg "assum[ed] responsibility over . . . the

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

distribution of all sums due to himself and other members of Innoprize," he instead "transferred [these sums] . . . to Innovative Real Estate [], a business [he] owned and controlled," and "[n]o portion of the [funds] ever were transferred to Beshmada.") As described above, substantial evidence was before the bankruptcy court that would have allowed it to conclude that $260,852.07 was due to Beshmada. It committed no clear error, and its finding must be **AFFIRMED**.

### 3. ATTORNEY'S FEES

Stromberg's final overt category of appeal relates to the bankruptcy court's award of attorney's fees. (Mem. at 19–21.) However, while the judgment initially included an award of attorney's fees, the Trustee's subsequent request for a specific amount in fees was denied, and no fees were actually rendered. (Bk. Docket No. 56.) The appeal of this issue is therefore **MOOT**.

### 4. FINAL OBJECTIONS

Though he does not include them in his "questions on appeal," Stromberg makes two additional points. First, he claims that Beshmada's causes of action should have been barred by the applicable statutes of limitations. (Mem. at 21–24.) Second, he argues that judgment for money lent was improperly awarded. (Id. at 14–15.)

The statute of limitations argument, much like the jurisdictional objection, has been waived. Stromberg did not make this claim for almost a year-and-a-half, and he agreed to a pre-trial order that did not include a statute of limitations defense. DP Aviation v. Smiths Indus. Aero. & Def. Sys., 268 F.3d 829, 842 n.8 (9th Cir. 2001) ("[a] pretrial order generally supersedes the pleadings, and the parties are bound by its contents") (quoting Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993). Because this is an affirmative defense, Stromberg's attempt to invoke it comes too late. Morrison v. Mahoney, 399 F.3d 1042, 1046–47 (9th Cir. 2005) (a party failing to set forth an affirmative defense in pleading cannot later rely upon it).

The money lent argument is somewhat confusing. While the bankruptcy court granted judgment in Beshmada's favor, "money lent" is mentioned nowhere in either the findings of fact and law or the final judgment. (Findings at 1–3; Judgment at 1–2.) Instead, the bankruptcy

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-8342 GAF<br>USBC Central District of California - Los Angeles,<br>2:09-bk-25523-BR<br>Aversary Case: 2:12-ap-01841-BR | Date | August 15, 2014 |
|---|---|---|---|
| Title | In re Beshmada, LLC | | |

court granted judgment based on an open book account.  (<u>Id.</u>)  That is, while it was certainly a theory presented below, there are no findings regarding "money lent" to either affirm or reverse. Stromberg's argument on this front must therefore be similarly rejected.

**IV.**
**CONCLUSION**

Having concluded that the bankruptcy court's findings and its exercise of jurisdiction were both proper, the Court **AFFIRMS** the entirety of the judgment below.  The hearing presently scheduled for Monday, August 18, 2014, is hereby **VACATED**.

**IT IS SO ORDERED.**